John- P. Cohaiait, Jr., J.
This is an action for a declaratory judgment. Plaintiffs seek to establish that the individual defendants (Maddock and Frascella) or either of them maintained on June 5, 1966 a policy of insurance covering them for an unusual and fatal accident that happened on that day.
Michael Maddock, deceased, a 12-year-old boy, came to his death,— as did Jean Lalomia, plaintiff’s intestate — when a contraption being operated by the boy, made contact with a car driven by Mrs. Lalomia. She thereupon lost control of her vehicle and crashed into an obstruction as a result of which she lost her life. Other plaintiffs then in the car sustained bodily injury.
The contraption the Maddock boy was propelling consisted of a conventional American bicycle from which had been removed the various operational parts, i.e., the pedals, one sprocket, the chain and coaster brake. In their place a lawn *532 mower gasoline engine of 3% H. P. had been substituted. The only way to stop the engine was to short the sparkplug.
The accident occurred on a public highway about three blocks from the boy’s home.
In the course of the trial the testimony revealed that about two or three weeks before the fatality, Daniel Haddock and Joseph Frascella, parents respectively of Hichael Haddock and Joseph Anthony Frascella (himself a 12-year-old boy) were together in a body at a time when young Frascella negotiated a transfer of possession of the contraption to young Haddock. As consideration a $10 bill passed hands which the elder Frascella insisted his son return. The Haddocks removed the cannibalized bicycle in the elder Haddock’s truck. And in the interim before the accident,' possession of the device remained with the Haddocks.
The interest (or lack of interest) of the defendant insurance companies is factually as follows: (all the following automobile policies were in force and effect on June 5, 1966).
1. Bankers and Shippers Insurance Co. (B&S) issued two policies to Daniel Haddock: (a) A combined automobile family policy (C'AF) on an Opel sedan specified in the declaration; and (b) A combination automobile policy (CA) on a 1964 Dodge truck as the only specified declared vehicle.
2. Maryland Casualty Co. (Maryland) issued three policies to Frascella and his wife, two of which covered automobiles specifically: (a) policy covering a one-half ton express truck and (b) policy covering a 1961 Austin Healey Sprite convertible and a 1958 four-door Chevrolet sedan.
3. Liberty Mutual Insurance Co. (Liberty) issued a policy to the Lalomias, containing the uninsured motorist indorsement (Insurance Law, § 167, subd. 2-a) by which it could conceivably become liable if no recourse could be had to any other existing automobile policy.
Two homeowners ’ policies (HOP) also figure in the action. One was issued by Maryland to the Frascellas for their dwelling premises at North Babylon, New York. The other was issued by Insurance Co. of North America (INA) to Daniel Haddock. Both were in effect on June 5, 1966.
From this congeries of policies we are asked to find one or more which covered a defendant and gave protection to the plaintiffs as a result of the tragic accident.
The parties stipulated that the proof to be adduced would be limited to a discussion of three relevant issues.
*533 (1) Is this device covered under any automobile insurance policy that was in force and effect at the time of this occurrence?
(2) Is this incident covered under homeowner’s policy of the Insurance Company of North America, HOP-46265, and/or the Maryland Casualty Company homeowner’s policy No. 65-613685, bearing in mind that the incident occurred at the intersection of Grenada Parkway and Spruce Place, in the community of Lindenhurst, on June 5, 1966?
(3) The third question is, the ownership of the two-wheeled device which was being operated by Michael Maddock on June 5, 1966.
For convenience the court will deal with the questions in the order of (1), (3) and (2).
As to the automobile policies issued by B&S and Maryland, plaintiffs concede that the respective CAF and CA instruments are identical. They take issue, however, with the definition given in the policies of ‘ ‘ automobile ’ ’. In CAF it is defined as a “ four wheel private passenger, station wagon or jeep type automobile ”, and in CA “ a private passenger, station wagon or jeep automobile ” and also includes under coverage A, B and Division 1 of coverage C “ any automobiles, the purpose and use of which are stated in the declaration as 1 pleasure and business ’ ”.
Plaintiffs urge that by attempting to define ‘ ‘ automobile ’ ’ the companies have gone beyond the broader verbiage employed in the New York statutes establishing minimum provisions, and have thus written in limitations not present in the law.
Thus they point to section 167 of the Insurance Law wherein reference is made “ to motor vehicles or of any vehicle as defined in section 59 (now § 388) of the Vehicle and Traffic Law ” (hereafter V&T Law). Section 388 at subdivision 2 says: “ ‘ vehicle ’ means a ‘ motor vehicle ’, as defined in section one hundred twenty-five of this chapter ’ ’ plus certain exceptions not pertinent to our problem.
Section 125, headnoted “ Motor vehicle ” carries a description which reads: 1 ‘ Every vehicle operated or driven upon a public highway by any power other than muscular power ”.
Plaintiffs’ conclusion is that since there is no reference to the number of wheels, the attempt to limit the coverage becomes a nullity.
The syllogism would seem irrefutable were it not that a confusion exists between “insurance coverage” and “ negli *534 gence ’ \ That the owner and/or operator or the device may be negligent no one disputes; that his negligence is covered by automobile insurance is another and different question. The doctrine of in pari materia cannot be applied to two such disparate principles.
For an insurance company to issue a liability policy for such a device as is before us would, in effect, be an invitation to the insured to violate and stultify the V&T Law of the State of New York. For obviously the device cannot be used legally on the public highway as a “ motor vehicle ’ ’. It cannot be registered as such (V&T Law, § 401), although motor vehicles must be- registered, and operating a motor vehicle on the public highway without registration constitutes a misdemeanor (V&T Law, § 401, subd. 18). Nor can it be registered as a motorcycle pursuant to section 410 of the V&T Law, which refers at subdivision 8 to section 123 for a definition of motorcycle. That definition is further diluted by section 124, namely: ‘ ‘ Motor driven cycle ’ ’ :
“ Every motorcycle including every motor scooter, with a motor which produces not to exceed five horsepower, and every bicycle with motor attached
The definition of a bicycle in the V&T Law, at section 102 notes that it is: “Every device propelled by the feet acting upon pedals, having wheels any two of which are more than twenty inches in diameter ”.
So that the device before us is neither a motor scooter, nor, in view of the surgery performed, is it a bicycle.
Such a device does not merit the dignity of a periodic inspection (V&T Law, § 301 et seq.); nor could it pass such inspection if submitted, for the obvious lack of braking facilities.
In McKinney’s Consolidated Laws of New York, Book 1, Statutes, principles of construction and interpretation have been postulated for the edification, enlightenment and guidance of legislators, lawyers and laymen alike.
Section 143 inveighs against unreasonableness. “It is a general rule in the interpretation of statutes that they shall receive a reasonable construction. A forced, unnatural or ridiculous construction which might tend to bring contempt upon the administration of justice is to be shunned. An interpretation which is contrary to the dictates of reason or leads to unreasonable results is presumed to be against the legislative intent and some other construction should be placed upon the statute, if possible, without violation of its language ’ ’.
Applying it at bar, would the Legislature wittingly permit a 12-year-old boy to operate a brakeless motor mechanism upon *535 the public highway when it goes to great lengths to prohibit the issuance of operators’ licenses to children under 16; or would it knowingly provide for the operation of such a vehicle by such a person on the highways of this State, realizing as it collectively must, the irresponsible proclivities of children? We think not.
Section 145 (Absurdity) tells us: “An absurd or frivolous purpose is not to be attributed to the Legislature. If a construction sought to be placed on a statute produces an absurdity it is, as a general rule, to be discarded.”
If the contraption herein qualifies as a motor vehicle for insurance purposes, why then could we not have motorized roller skates; or, testing the mechanical ingenuity of an adult midget, a tricycle or velocipede motorized as was the instant device? A fertile imagination could conceive of even more absurd methods of locomotion which, if carried to their logical conclusion, could sweep the insurance companies out of business, by making it mandatory for them to cover by insurance any gadget the mind of man could devise.
Bakker v. Ætna Life Ins. Co. (264 N. Y. 150) and Kocak v. Metropolitan Life Ins. Co. (144 Misc. 422, affd. 237 App. Div. 780, affd. 263 N. Y. 518) cited by plaintiffs, are not in point. Baicker holds that if a policy of liability insurance is issued (in precompulsory coverage days) it must make provision that a car driven with the consent of the owner, expressed or implied, be covered by the policy.
Kocak involves the contractual validity of an incontestability clause in a life insurance policy. Neither of these authorities nor others cited in the plaintiffs’ brief deal with possible criminal violations of the law as would be envisaged if the judicial imprimatur were placed upon plaintiffs’ interpretation in this case.
Liberty’s position at bar is the same as that of B&S and Maryland. For certainly the uninsured motorist indorsement gives no more comfort to plaintiffs than do the other automobile policies.
The first question, then, is answered in the negative. No automobile policy in force and effect on June 5, 1966 covered the device involved in the fatal accident.
(3)
From all the relevant testimony adduced, the court, as trier of the fact, finds that ownership of the device reposed in Daniel Maddock at the time of the fatality.
*536 (2)
By transposing questions (2) and (3) the necessity of concerning ourselves with the Maryland (Frascella) homeowner’s policy has been obviated. The INA policy (HOP — 46265) alone remains for consideration.
In the fourth cause of action in the complaint, plaintiffs allege at paragraph thirty-seventh the existence of the INA policy. Paragraph thirty-eighth then states: ‘ ‘ That the aforesaid policy of insurance was in full force and effect on June 5, 1966, and provided liability insurance coverage for legal liability arising out of the ownership, operation and control of the vehicle referred to herein under the circumstances of the accident described herein ”.
This was denied upon information and belief.
In answer to Question 1 all relevant reference has been made to the argument classifying the device as a “motor vehicle ” in the contemplation of the statutes (Insurance Law and V&T Law). Here we shall treat the word “ vehicle ” in the ordinary dictionary definition of ‘1 that in or on which a person or thing is or may be carried ’ ’ and1 ‘ that which is used as the instrument of conveyance or communication ’ ’.
The items in the policy to be discussed will be the 1 ‘ Provisions only applicable to Section II — Comprehensive Personal Liability ’ ’
The insuring agreement states under:
“ (a) Coverage E — Personal Liability “ To pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this Section, even if any of the allegations of the suit are groundless, false or fraudulent ”.
“ Coverage F — Personal Medical Payments “ To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services * * # and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury caused by accident, (1) while on the premises of an Insured, or (2) while elsewhere if such bodily injury (a) * * * (b) is caused by the activities of cm Insured(Emphasis supplied.)
“ Coverage H — Physical Damage to Property
*537 “ To pay for loss of property of others caused by an Insured. ‘ Loss ’ means damage or destruction.”
“ c. Definitions.
“1. Insured. The unqualified word ‘ Insured ’ includes (a) the named Insured and (b) if residents of his household * * * and any other persons under the age of twenty-one in the care of an Insured. ’ ’
Applying the allegations in the complaint to the policy, and giving every fair intendment to the complaint, it is noted that the accident happened elsewhere, i. e. not on the home premises; that it was caused by the activities of an insured, i. e., Michael Haddock; and that he was a person under the age of 21 years in the care of the named insured.
Under the circumstances any references to automobiles or any other exclusionary clauses have no application. INA, not Haddock, wrote the policy. Legal construction requires that an instrument be read against the person who prepared it. (Moran v. Standard Oil Co., 211 N. Y. 187.)
But, says INA, assuming arguendo that we are otherwise liable, disclaimer should be allowed because Haddock has failed to co-operate as provided by the terms of the policy.
His alleged failure consists in making allegedly inconsistent statements as to the ownership of the device. On two occasions he said it was his; on the third he claimed it belonged to his son.
Under either claim coverage would be afforded, so that the attempted disclaimer has no merit. In passing, it may be noted that Haddock gave a signed statement to his carrier; and that he testified both at an examination before trial and at the trial itself. He has been available whenever his. availability was required. Hence it is difficult to imagine what he could have done by way of failure to co-operate. It matters not whether he or his son owned the contraption, for in either case coverage was present. (See Thrasher v. United States Liab. Ins. Co., 19 N. Y. 2d, 159, 168) wherein it was noted: “ the courts have consistently held that the burden of proving the lack of co-operation is a heavy one indeed.”
In this case it has proved too heavy for INA.
To recapitulate the questions posed are answered as follows:
1. No.
2. As to Insurance Co. of North America (INA) Yes As to Maryland Casualty Co. No
3. Ownership is or was in Daniel Haddock
A declaration is made accordingly (CPLR 3001).